IN THE MATTER OF THE APPLICATION OF PAULO (PAUL) CARUSO, APPELLANT, PRO SE.

Argued June 9, 1952—Decided June 26, 1952.

*Mr. Robert S. Hartgrove* argued the cause for the appellant.

*Mr. Paul T. Huckin,* Deputy Attorney-General of New Jersey, argued the cause for the respondent, the State of New Jersey (*Mr. Harry L. Towe,* Deputy Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

BURLING, J. This is an appeal brought by one Paulo (Paul) Caruso from judgment of the Superior Court, Appellate Division, which affirmed an order of the Mercer County Court denying Caruso's application for writ of *habeas corpus.*

Caruso was indicted by the Bergen County grand jury at the December, 1941, term on two counts, one charging him with the crime of assault with intent to rob on April 5, 1941, and the second charging that he had been convicted of high misdemeanors on three separate prior occasions. On February 2, 1942, Caruso was tried and convicted by a jury in the Bergen County Court of Quarter Sessions under the aforesaid indictment. His counsel, assigned by the court, stipulated in open court that the prior convictions alleged in the indictment were true. As a result of the conviction, Caruso was sentenced to State Prison for life. He filed no appeal, but on November 30, 1943, petitioned the former Supreme Court for a writ of *habeas corpus.* His petition was granted and the writ allowed. The court by a single justice subsequently discharged the writ. *In re Caruso,* 131 *N. J. L.* 505 (*Sup. Ct.* 1944). Caruso then petitioned the former Supreme Court for a writ of *certiorari* to review the action of the single justice in discharging the writ of *habeas corpus.* The writ was initially allowed, but after consideration by the court was dismissed. *In re Caruso,* 135 *N. J. L.* 522 (*Sup. Ct.* 1947). Subsequently there appears to have been no endeavor by Caruso to pursue his alleged rights until January 25, 1951, when he again applied for a writ of *habeas corpus,* this time

to the Mercer County Court. The application was denied and Caruso appealed to the Superior Court, Appellate Division. The order of the Mercer County Court was affirmed, and it is from the judgment of affirmance that Caruso appeals on constitutional grounds, to this court.

The questions involved on this appeal include, *inter alia,* (a) whether *L.* 1940, *c.* 219, *p.* 889, *sec.* 3, amendatory of *R. S.* 2:103–10 (substantially reenacted in *N. J. S.* 2A:85–12) is constitutional, and (b) whether the writ of *habeas corpus* is available to Caruso to review the validity of his conviction and sentence.

The constitutionality of the pertinent portion of the Habitual Criminal Act, namely, *R. S.* 2:103–10 as amended by *L.* 1940, *c.* 219, *sec.* 3, was upheld by the former Supreme Court on Caruso's earlier application for *habeas corpus. In re Caruso, supra* (131 *N. J. L.,* at *pp.* 506, 508; affirmed 135 *N. J. L.,* at *p.* 523). And has been sustained in other decisions of courts in this State. *State v. Cubbler,* 4 *N. J. Super.* 297 *(App. Div.* 1949); *State v. Janiec,* 9 *N. J. Super.* 29 *(App. Div.* 1950), affirmed on other grounds, 6 *N. J.* 608 (1951), *cert.* den. 341 *U. S.* 955, 71 *S. Ct.* 1007, 95 *L. Ed.* 1376 (1951); *In re Zee,* 13 *N. J. Super.* 312 *(Cty. Ct.* 1951), affirmed *per curiam* 16 *N. J. Super.* 171 *(App. Div.* 1951). The act was inferentially upheld in *State v. Burns,* 136 *N. J. L.* 601, 603 *(E. & A.* 1948). And this type of statute was upheld by the United States Supreme Court at an early date. See *Graham v. West Virginia,* 224 *U. S.* 616, 32 *S. Ct.* 583, 56 *L. Ed.* 917 (1912).

The precise constitutional argument raised on this appeal, however, does not appear to have been dispositively determined by a court of last resort of this State. Caruso asserts that *R. S.* 2:103–10 as amended, *supra,* is arbitrary and discriminatory in that it classifies as fourth offenders all those persons who thrice before have been convicted of high misdemeanors, and does not contain the restrictive clause as to sentencing to the State Prison which was contained in the statute prior to the 1940 amendment. Caruso

contends that his three prior convictions having occurred prior to the 1940 amendment, he had a vested right to classification of those convictions under the statute as it then existed. The precise question was decided *In re Zee, supra,* and we find correctly so (see 13 *N. J. Super., pp.* 317–320). We specifically adopt the following language from the opinion filed by Judge Hughes therein:

"Plainly, the theory of this enhancement of punishment is aimed at criminals of the recidivous type and the punishment for the culminant offense is greater not by relation back to the previous offenses, but only because such criminal has brought himself within a class established by law as deserving and requiring a more severe punishment and restraint than the class of criminals less hardened to crime. *Blackburn v. State,* 50 *Ohio St.* 428, 36 *N. E.* 18 (*Sup. Ct. Ohio,* 1893). The punishment is for the new crime only, but is the heavier if the offender is an habitual criminal. The statute thus imposes a punishment on none but future crimes and is not *ex post facto.* It affects alike all persons similarly situated and, therefore, does not deprive any one of the equal protection of the laws. *McDonald v. Massachusetts,* 180 *U. S.* 311, 45 *L. Ed.* 542, 21 *S. Ct.* 389 (1901); *Carlesi v. New York,* 233 *U. S.* 51, 58 *L. Ed.* 843, 34 *S. Ct.* 576 (1914). The courts have held quite uniformly to this theory in approving statutes expressing this policy of enhancing punishment for the habitual criminal. 116 *A. L. R.* 211, n. It is the consensus that the habitual criminal statute is sound in principle and sustained by reason. Aside from the offender and his victim, there is always another party concerned in every crime committed, namely, the State; and it does no violence to any constitutional guarantee for the State to enhance the punishment for second or subsequent offenses. The true ground upon which these statutes are sustained is that the punishment is awarded for the second offense only and that in determining the amount and nature of penalty to be inflicted, the Legislature may require the courts to take into consideration the persistence of the defendant in his criminal course. 25 *Am. Jur., Hab. Crim.,* p. 261; *People v. Brophy,* 287 *N. Y.* 132, 38 *N. E.* 2d 468 (*Ct. App., N. Y.,* 1941), *certiorari* den. 317 *U. S.* 625, 87 *L. Ed.* 506, 63 *S. Ct.* 62 (1942). This type of legislation was established very early in this country, and the United States Supreme Court has commented that it has uniformly been sustained in the state courts. *Graham v. West Virginia,* 224 *U. S.* 616, 32 *S. Ct.* 583, 56 *L. Ed.* 917, 32 *S. Ct.* 583 (1912)." 13 *N. J. Super. pp.* 319-320.

In the present case the offense for which Caruso was tried and convicted, and as a result of which he was sen-

tenced as an habitual criminal, was perpetrated on April 5, 1941. The 1940 amendment to the Habitual Criminal Act became effective on November 19, 1940, and therefore was clearly applicable in his case.

The second question involved is whether Caruso is entitled to the writ of *habeas corpus* for the purpose of reviewing the legality of his conviction. Essentially the matters alleged in the application for the writ relate to proof of Caruso's previous convictions. Since review was available to Caruso by writ of error at the time of his conviction he was not entitled to the writ of *habeas corpus* on the application under review on the present appeal. Cf. *State v. Janiec, supra* (6 *N. J.,* at *pp.* 612–614). If for any reason the conduct of his trial by his counsel was improper, that matter was then reviewable by writ of error. *State v. Leaks,* 124 *N. J. L.* 261 (*E. & A.* 1939). And at his trial Caruso in no way sought to contest the validity or unimpaired character of the former judgments of conviction, although he had ample opportunity to do so. Such failure has been held by the United States Supreme Court to deprive a prisoner, sentenced as an habitual criminal, of the opportunity to be heard thereon. *Graham v. West Virginia, supra* (224 *U. S.,* at *p.* 625; 32 *S. Ct.,* at *p.* 586; 56 *L. Ed.,* at *p.* 921). If on the face of the petition a person is not entitled to the writ, he need not be afforded a hearing on the matters alleged therein. *Cf. Walker v. Johnston,* 312 *U. S.* 275, 284, 61 *S. Ct.* 574, 85 *L. Ed.* 830, 834 (1940).

If the trial court's jurisdiction over the person and subject matter was not wanting, its proceedings were not open to collateral attack upon *habeas corpus* on the ground that there existed a defense which, if pleaded, would have prevented a sentence as a fourth offender. Compare *Haas v. Henkel,* 216 *U. S.* 462, 30 *S. Ct.* 249, 54 *L. Ed.* 569, 578 (1910); 25 *Am. Jur., Habeas Corpus, sec.* 51, *p.* 182. And error in the admission or exclusion of evidence furnished no ground for relief on *habeas corpus, Charlton v. Kelly,* 229 *U. S.* 447, 33 *S. Ct.* 945, 57 *L. Ed.* 1274, 1279 (1913);

*Glasgow v. Moyer,* 225 *U. S.* 420, 32 *S. Ct.* 753, 56 *L. Ed.* 1147, 1150 (1912) ; 25 *Am. Jur., Habeas Corpus, sec.* 53, *p.* 183.

The order of the Mercer County Court of October 22, 1951, denying Caruso's application for a writ of *habeas corpus* was valid.

In view of our disposition of the two principal questions involved in this appeal we pass without deciding the question whether Caruso's application for the writ of *habeas corpus* should have been denied on the ground of laches.

For the reasons above stated the judgment of the Superior Court, Appellate Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and BRENNAN—5.

*For reversal*—None.